619 So.2d 786 (1993)
STATE of Louisiana
v.
Fenton PETERSON.
No. 92-KA-1389.
Court of Appeal of Louisiana, Fourth Circuit.
May 27, 1993.
*787 Harry F. Connick, Dist. Atty., Val M. Solino, Asst. Dist. Atty., New Orleans, for plaintiff-appellee, State.
Philip J. Foto, New Orleans, for defendant-appellant, Fenton Peterson.
Before KLEES, BYRNES and WALTZER, JJ.
KLEES, Judge.
The defendant Fenton Peterson was charged by bill of information with possession of cocaine with intent to distribute. He pleaded not guilty; and, after his first trial ended in a mistrial, defendant was tried by a twelve-person jury which found him guilty as charged on March 18, 1992. The State filed a multiple bill; and, on April 30, 1992, the trial court adjudged defendant to be a multiple offender and sentenced him to twenty years at hard labor. This appeal follows.

FACTS:
On the evening of March 21, 1991, Detective Joseph Williams and Sergeant Eddie Selby, acting pursuant to a tip from an informant, went to the area of the 3700 block of Abundance Street. While keeping the area under surveillance, they saw defendant seated on the front steps of 3706 Abundance while defendant's brother, Albert "South" Peterson, and William Coleman, also known as "W.C.", were seated on the trunk of a red car parked between 3706 and 3710 Abundance Street.
At 7:40 p.m., Williams and Selby saw an unidentified male approach defendant with whom he briefly conversed. The unidentified male then handed what appeared to be currency to defendant. Defendant walked across the street to the side of the building at 3723 Abundance where defendant lifted a rock, picked up a clear plastic bag, and removed an object from the bag. Defendant walked back and handed the object to the unidentified male who then left the scene. Defendant put the plastic bag back under the rock and spoke with his brother and Coleman before returning to the steps to sit down.
Believing that they had witnessed a drug transaction, Williams and Selby exited their car. Selby placed defendant under arrest, while William frisked "South" and "W.C." After frisking them and finding no weapons, Williams crossed the street, picked up the rock, and found the plastic bag, which contained twenty small yellow bags of crack cocaine. Meanwhile, Selby advised defendant of his rights, and "South" and "W.C." were allowed to go.
Defendant was transported to the police annex building for processing; and, as they entered the basement of the building, defendant was asked if he were selling the *788 cocaine for his brother. Defendant stated that "W.C." had "fronted" him the cocaine. After parking the car, Williams retrieved a small tape recorder, which he had recently purchased, from the trunk. Williams hid the tape recorder in his waistband; and, after defendant was brought into the annex narcotics office, he repeated what he had said in the car. Defendant was not told that this statement was being recorded.

ERRORS PATENT:
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1:
In his first assignment of error, defendant complains that the trial court erred in failing to exclude an illegally obtained, alleged partly taped statement which was in contravention of Article I, Sections 5 and 16 of the Louisiana Constitution, C.Cr.P. art. 768, R.S. 15:450, R.S. 15:451, and R.S. 15:452. Defendant first, appears to be asserting that his inculpatory statement was obtained in violation of his constitutional rights. Second, he appears to be arguing that he was not properly notified under C.Cr.P. art. 768 of the existence of the inculpatory statement prior to trial. Third, he seems to be claiming that the State failed to introduce the entire statement into evidence as required by R.S. 15:450. Fourth, he appears to be arguing that the State failed to lay a proper foundation as required by R.S. 15:451 and R.S. 15:452 for the introduction of the statement.
The thrust of defendant's constitutional argument seems to be that the statement was obtained through coercion or duress due to the atmosphere of the police annex basement and that Williams and Selby had allegedly beaten defendant when they arrested him for another offense several months earlier. This argument is tied in with defendant's claim that the State failed to lay a proper foundation for the admission of the statement into evidence.
A review of the record does not support defendant's claim that the inculpatory statement was obtained through coercion or duress. From the testimony of the officers, the annex basement office appears to be an ordinary police office, and as such, it cannot be deemed a coercive environment. If it were so deemed, then any statement or confession obtained in a law enforcement office would be the product of coercion. As to the alleged beating arising from the earlier arrest, the State rebutted this allegation by showing that defendant denied any ill treatment at the officers' hands when he was brought to Central Lockup on the prior arrest. Both Williams and Selby testified that defendant was fully advised of his Miranda rights and that no force or intimidation was used to obtain defendant's statement.
Regarding defendant's claim of a violation of C.Cr.P. art. 768, no merit can be found. Article 768 requires the State to give the defendant notice prior to trial if it intends to introduce an inculpatory statement into evidence; and, if the State fails to do so, the statement is inadmissible. The record clearly shows that the State gave defendant such notice because defendant moved to suppress the statement more than two months before the trial.
Defendant claims that the tape made by Williams did not contain his entire statement, making it inadmissible under R.S. 15:450. Defendant appears to be arguing that because the taping did not begin until after he started to make his statement in the police car as it entered the annex basement, none of the taped statement is admissible.
R.S. 15:450 provides:
Every confession, admission or declaration sought to be used against anyone must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
The rights of an accused under this statute are not violated when the purported statement of the accused as testified to by the investigating officer does not consist of a verbatim reiteration of the conversation between them due to the witness' inability to recall or other valid explanation. State *789 v. Marmillion, 339 So.2d 788 (La.1976). The law does not require the production of nonexistent portions of the confession or portions which cannot be recalled. Id.
In State v. Alexander, 339 So.2d 818 (La.1976), police officers recorded a portion of the defendant's statement as they transported him to the police station. The officers stated that they had turned off the tape recorder because the defendant was making irrelevant admissions. The officers testified as to what the defendant said while the tape recorder was off. The Supreme Court held that under those facts there was compliance with R.S. 15:450.
In State v. Thomas, 504 So.2d 907 (La. App. 1st Cir.1987), writ denied 507 So.2d 225 (La.1987), a malfunction of the tape recorder caused only parts of the defendant's statement to be recorded; and, the defendant moved to suppress the statement since a large portion of it was missing. The trial court denied the motion, and the police officer who recorded the statement testified as to what the defendant said in the missing portion. Citing Marmillion, the First Circuit upheld the trial court's ruling even though the police officer could not remember everything that had been said.
In the present case, the trial court did not err in admitting the taped statement into evidence. The only reason the entire statement was not taped was because defendant started to make the inculpatory statement before Williams could get to his tape recorder and turn it on. Both officers testified as to what defendant said prior to the taping; thus, the substance of defendant's entire statement was put before the jury. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2:
In this assignment of error, defendant complains that the trial court erred in denying his motion to suppress his inculpatory statement because his constitutional right to privacy was violated by the covert taping of the statement and because the police officers believed the taping to be illegal when they did it. What defendant appears to be arguing is that he had an expectation of privacy in making the statement to the police which was violated by the bad faith of the officers when they secretly recorded his statement.
With regard to the violation of defendant's right to privacy under Article I, Sec. 5 of the Louisiana Constitution, defendant could not have had a reasonable expectation of privacy in making an inculpatory statement to the police officers who had just arrested him. In State v. Hussey, 469 So.2d 346 (La.App. 2d Cir.1985), writ denied 475 So.2d 777 (La.1985), a state trooper secretly recorded the conversation between the defendants who were seated in the trooper's car where they discussed the burglary they had committed. The Second Circuit concluded that under the circumstances the defendants' expectation of privacy would not have been reasonable or justifiable. Thus, if the private individuals talking among themselves in Hussey could not have a reasonable expectation of privacy, an arrestee speaking to police officers in a police annex building would be even less reasonable in having an expectation of privacy. See also State v. Reeves, 427 So.2d 403 (La.1982). As to the fact that at the time the police officers believed the taping to be illegal, defendant does not show how this has any bearing on the admissibility of his taped statement. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3:
In his third assignment of error, defendant complains that the trial court erred in admitting the tape into evidence because the tape was garbled, unintelligible, and incomplete. However, none of the transcripts of either pretrial hearings or trial itself show that defendant raised the issue that the tape was inadmissible due to its poor quality. Therefore, any objection on this matter has been waived. C.Cr.P. art. 841. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4:
In this assignment of error, defendant complains that the trial court erred in not granting his motion to continue the *790 trial due to the absence of a material defense witness, Antoinette Roland. Defendant claims that because of an error made by the clerk of court's office with regard to Ms. Roland's address, she was not properly served.
The record shows that defendant sent a letter to his attorney requesting that Ms. Roland and three others be subpoenaed for trial; and, this letter was somehow put in the record where it contains a notation signed by the trial judge that those four people were to be subpoenaed for the day of trial. The letter gives Ms. Roland's address as 3706 Abundance and that she lived in either Apartment C or G (defendant's handwriting makes it somewhat difficult to decipher). Ms. Roland did not appear for trial because she had not been served with the subpoena. The return noted that Apartment C was vacant and that there was no Apartment G. At the hearing on the motion to continue, defendant's brother stated that Ms. Roland lived at 3760 Florida Avenue; and, the trial judge called a recess to give the brother an opportunity to get her. At the hearing on the motion for new trial, Ms. Roland stated that she lived at 3760 Florida Avenue and that she saw what had happened on the night in question. The State, in its brief, points out that at defendant's first trial, which ended in a mistrial, defense counsel stated that Ms. Roland, who had not appeared, was not needed as a witness.
The right of a defendant to compulsory process for obtaining witnesses on his behalf is contained in both the federal and state constitutions, as well as statutory law. U.S. Const., Amend. 6; La. Const., Art. 1, Sec. 16; C.Cr.P. art. 731. The right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served. State v. Latin, 412 So.2d 1357 (La.1982); State v. Hill, 534 So.2d 1296 (La.App. 4th Cir.1988), writ denied 536 So.2d 1248 (La. 1989).
C.Cr.P. art. 736 requires the sheriff to set out in his return on the subpoena every fact that in his opinion justifies the return when the witness cannot be found. The sheriff is required to exercise reasonable diligence in searching for the person designated in the subpoena. State v. Mizell, 341 So.2d 385 (La.1976); State v. Hill, supra.
It does not appear that the trial court erred in denying the continuance due to the lack of service of the subpoena on Ms. Roland. The lack of service was due to an error by defendant because he gave the wrong address for Ms. Roland. This error cannot be attributed to the sheriff or clerk of court. The sheriff exercised reasonable diligence in trying to find her based on the information he had gotten from defendant. Moreover, defendant's contention that Ms. Roland was a vital defense witness is contradicted by the statement from the first trial that she was not needed as a witness. Therefore, the trial court did not err in refusing to continue the trial; and, this assignment of error is without merit.
Accordingly, for the reasons expressed above, defendant's conviction and sentence are hereby affirmed.
AFFIRMED