UNITED STATES of America,
Plaintiff–Appellee,

v.

Damon PIPPEN, Kenya Lark, and
Thomas Jones, Defendants–
Appellants.

Nos. 96–1445, 96–1550 and 96–1892.

United States Court of Appeals,
Seventh Circuit.

Argued and Submitted Nov. 13, 1996.

Decided May 20, 1997.

Andrew B. Baker, Jr. (argued in Nos. 96-1445, 96-1550 and submitted in No. 96-1892), Office of United States Attorney, Dyer, IN, for Plaintiff-Appellee.

Fred R. Hains (argued), Rochelle S. Meyers, South Bend, IN, for Defendant-Appellant in No. 96-1445.

Daniel L. Toomey (argued), Merrillville, IN, for Defendant-Appellant in No. 96-1550.

William S. Kaminski, Newby, Lewis, Kaminski & Jones, LaPorte, IN, Thomas Jones, Chicago, IL, pro se, for Defendant-Appellant in No. 96-1892.

Before CUMMINGS, RIPPLE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

The defendants in this case were all participants in a crack cocaine distribution ring that operated in Benton Harbor, Michigan, Pontiac, Michigan, and Elkhart, Indiana. Just prior to the scheduled jury trial, defendant Damon Pippen pleaded guilty to Count 1 of the superseding indictment, which charged him with conspiracy to distribute in excess of 50 grams of crack cocaine. Defendant Kenya Lark went to trial, and the jury found him guilty on the twelve counts of the superseding indictment that pertained to him. Defendant Thomas Jones also pleaded guilty to a one count indictment that charged him with conspiracy to possess with intent to distribute cocaine base. Before this court, Pippen and Lark complain about various aspects of the sentences they received, while Jones' attorney has filed a no-merit brief under Circuit Rule 51(a) and *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18

L.Ed.2d 493 (1967), seeking to withdraw as counsel. We affirm the sentences Pippen and Lark received; we grant the motion of Jones' attorney to withdraw; and we will appoint new counsel for Jones. In a separate order issued today in *United States v. Wallace*, No. 96–1005, —— F.3d ——, we grant the *Anders* motion of the attorney for co-defendant Ray Shawn Wallace to withdraw.

Pippen and Lark were actively engaged in the sale and distribution of crack cocaine as early as 1990. Lark maintained a number of crack houses in Benton Harbor, and one witness characterized Pippen as Lark's right-hand man, who would take over if Lark were not around. By late 1990 and early 1991, Lark, Pippen, and Calvin Graham became involved in crack cocaine sales in Pontiac. Lark furnished cocaine to Pippen (then about 17 years old), and both Pippen and Graham (then about 16 years old) sold it from a crack house Lark ran in Pontiac. Lark, Pippen, and others continued their illegal activities over the next couple of years, occasionally spending time in jail on drug-related charges but somehow escaping federal indictments during that period. By mid–1991, the conspiracy had moved into Elkhart and was active in supplying crack cocaine to buyers in the Elkhart housing projects. It was not until January 6, 1994, that the grand jury returned the indictment in this case, which named Pippen, Lark, Jones, and fourteen other co-defendants. Because the issues on appeal differ for each defendant, we consider them separately.

## A. Damon Pippen

Pippen argues that the sentencing judge erred when he increased Pippen's offense level by three points based on a finding that Pippen was a manager in the conspiracy for purposes of U.S.S.G. § 3B1.1(b). That section provides for a three-level increase if the defendant "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive...." Pippen claims (1) that the district judge did not make sufficiently specific findings with respect to his managerial role, (2) that the judge should not have relied on testimony presented at Lark's trial without making a finding that it was relevant to Pippen's offense as required by U.S.S.G. § 1B1.3, and (3) that the absence of a finding that Pippen had decision-making authority or otherwise helped to run the organization was fatal to the ultimate conclusion that he was a manager.

■ Although Pippen is correct to point out that the sentencing judge must state in open court the reasons for the particular sentence, see 18 U.S.C. § 3553(c), and must make a finding on each part of the presentence report that the defendant challenges, see Fed.R.Crim.P. 32(c)(1), we find that the judge complied with both these rules. In considering the "manager" enhancement, the judge made the following statement at the sentencing hearing:

> Based on everything that's in front of me, the evidence that I heard, the Lark trial, the documents that were presented, the Defendant's own statement, that there is no doubt in my mind that [Pippen] does qualify for being in a position as a manager. And therefore, the objection [to the presentence report] is overruled.

This statement was adequate under the standard we described in *United States v. McKinney*, 98 F.3d 974 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1119, 137 L.Ed.2d 319 (1997), in which we held that the sentencing court may discharge its duty under what is now Fed.R.Crim.P. 32(c)(1) by "making reference to the presentence report ... especially [if] ... the defendant has merely objected to the report ... without offering any evidence of inaccuracy." *Id.* at 982 (citation omitted). (The *McKinney* court referred to Fed.R.Civ.P. 32(c)(3)(D), the predecessor to Rule 32(c)(1), but the change in the rule makes no difference for these purposes.) See also *United States v. Carson*, 9 F.3d 576, 585 (7th Cir.1993) (affirming enhancement where the record adequately supported the finding). As in *McKinney*, Pippen did not take issue with any specific part of the presentence report. For its part, the government pointed out that Pippen and Lark had distributed the crack cocaine through a number of other people, that Pippen had recruited at least one person for the

group, and that Pippen was Lark's right-hand man. The judge specifically referred to the supporting information in the record, including the presentence report, when he concluded that Pippen was a manager. Although the judge's explanation of his finding was regrettably brief, we find that the record adequately supported his conclusion and thus that the judge did not clearly err in imposing the enhancement. See *United States v. Flores–Sandoval*, 94 F.3d 346, 349 (7th Cir. 1996); *United States v. Fones*, 51 F.3d 663 (7th Cir.1995). We therefore reject Pippen's first and third objections.

■ Pippen cannot object in general to the fact that the sentencing judge relied on information from his co-defendant's trial. The only question relevant to his second objection is whether the acts on which the judge based his conclusions were part of the same course of conduct for which Pippen had pleaded guilty. See U.S.S.G. § 1B1.3(a)(2); Part B, Introductory Commentary. Here, the testimony in question dealt specifically with Pippen's role in the conspiracy—the precise issue that was relevant for the § 3B1.2(b) enhancement. It was not improper for the district judge, who had also presided over Lark's trial, to take this testimony into account when he sentenced Pippen, nor was it necessary for the judge to make separate findings under these circumstances about the relevance of the conduct described in that testimony to Pippen's offense.

### B. Kenya Lark

■ Lark's sentence was an especially harsh one: eleven terms of life imprisonment for the distribution and conspiracy convictions, and 240 months for a money laundering count that was part of the indictment. On appeal, he argues that the trial judge improperly enhanced his offense level by two points for obstruction of justice, under U.S.S.G. § 3C1.1, and by two additional points for possession of a firearm during the commission of the crime, under U.S.S.G. § 2D1.1(b)(1). We review both these decisions under the clearly erroneous rule, see *United States v. Hickok*, 77 F.3d 992, 1007 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996); *United*

*States v. Lewis*, 79 F.3d 688, 689 (7th Cir. 1996), and on that basis, we find no error in the district court's conclusions.

■ The district judge offered two reasons for the obstruction of justice enhancement: first, Lark testified falsely when he stated that he had not dealt crack after he was released from jail in May 1991 (following a February 1991 arrest); and second, Lark attempted to pressure four codefendants who had provided statements incriminating Lark to submit affidavits retracting those statements, as well as attempting to pressure other co-defendants into withdrawing their plea agreements and refusing to testify. Without belaboring the point, we find that the evidence before the judge amply supported both findings (although we would need to find support for only one of them in order to affirm). With respect to the false statement about his crack dealings, Lark attempts to discredit the testimony of witnesses who testified about his post-May 1991 activities. The district judge, however, was entitled to believe those witnesses and to disbelieve Lark's denials. With respect to Lark's efforts to pressure his co-defendants, we begin by noting that U.S.S.G. § 3C1.1, Application Note 3(a), includes "threatening, intimidating, or otherwise unlawfully inducing a co-defendant [or] witness ... or attempting to do so" as conduct amounting to obstruction of justice, and Application Note 3(b) adds "committing, suborning, or attempting to suborn perjury...." Lark argues that the district judge should not have believed the testimony of an Indiana police officer, who in turn had been informed of Lark's activities by the codefendants themselves. While this may have been hearsay, it is well established that the ordinary rules of evidence do not apply in sentencing proceedings, see *United States v. Gerstein*, 104 F.3d 973, 978 (7th Cir.1997), and that we will give special deference to the district judge's credibility determinations. *United States v. Hickok, supra*, 77 F.3d at 1007.

Lark's attack on the enhancement based on possession of a firearm also misses the mark. U.S.S.G. § 2D1.1(b)(1) requires this enhancement "if the weapon was present, unless it is clearly improbable that the weap-

on was connected with the offense." *Id.*, Application Note 3. The government presented evidence showing that one Peter Ballard had sold a .41 Magnum to Lark, and that the transaction took place at the home of Charlotte Ervin. Lark does not deny either that the transaction took place or that he resided in Ervin's home for a period of time; he claims only that the government failed to prove that the gun was connected to his drug activity. The government showed, however, that Lark conducted drug transactions from Ervin's home, and it argues that Lark's possession of the gun at the house sufficiently connects it to his drug crime to support the § 2D1.1(b)(1) enhancement.

 We agree. Lark's only response is that his mental state was "against using and possessing handguns." But the government did not need to prove that he "used" the gun in order to support the enhancement; possession is all that is required. Furthermore, his mental state is beside the point if he actually possessed the gun under circumstances that connected it to the drug crime. The district court was entitled to draw the inference that he did, from the evidence of possession at the very place from which he conducted his drug business; it was certainly not "clearly improbable" that the weapon was connected to the drug offense, which is the only way to avoid the enhancement once possession is proven. See generally U.S.S.G. § 2D1.1, Application Note 3.

### C. Thomas Jones

 This appeal was submitted on an *Anders* brief. Counsel has failed, however, to comply with the requirements for a no-merit brief, articulated in *Anders* itself and in many decisions from this court. See, *e.g.*, *Penson v. Ohio*, 488 U.S. 75, 80, 109 S.Ct. 346, 349, 102 L.Ed.2d 300 (1988), quoting from *Anders v. California*, 386 U.S. at 744, 87 S.Ct. at 1399; *Steward v. Gilmore*, 80 F.3d 1205, 1213 (7th Cir.1996). His "Summary of Argument" consists of one sentence: "An appeal is non-meritorious." His "Argument" section is no better; it is nine lines long in its entirety, and in that space it merely summarizes the holding of *Anders* and represents that counsel has "conducted a

thorough evaluation of the record" and has found nothing that would arguably support an appeal. There is no hint of a discussion of arguments that might be raised and why counsel believes them to be frivolous. As we have stated previously, counsel's duty in such cases is to file a brief that:

> (1) identif[ies], with record references and case citations, any aspect of the proceeding in the district court that a court or another lawyer might conceivably think worth citing to the appellate court as a possible ground of error; (2) sketch[es] the argument for reversal that might be made with respect to each such potential ground of error; and (3) explain[s] why he nevertheless believes that none of these arguments is non-frivolous.

*United States v. Edwards*, 777 F.2d 364, 366 (7th Cir.1985) (per curiam). Furthermore, although we have noted before that this court would not scour the record in search of an appealable issue if counsel has fallen down on the job, see *United States v. Wagner*, 103 F.3d 551, 552–53 (7th Cir.1996), when counsel files an adequate *Anders* brief, we must have the record so that we can evaluate any contentions that are made. Rather than directing Jones' present lawyer to file another brief, we have decided to grant his motion to withdraw and to appoint another attorney to evaluate Jones' appeal.

In summary, we AFFIRM the sentence in *United States v. Pippen*, No. 96–1445; we AFFIRM the sentence in *United States v. Lark*, No. 96–1550; and we GRANT counsel's request to withdraw in *United States v. Jones*, No. 96–1892. An order appointing new counsel for Jones will issue in due course.