NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-717

STATE OF LOUISIANA

VERSUS

WESLEY JAMES MONROE

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR-132762, DIVISION K
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Sylvia R. Cooks,  J. David Painter, and Shannon J. Gremillion, Judges.

CONVICTIONS AFFIRMED.
MOTION TO WITHDRAW GRANTED.

Michael Harson, District Attorney
Michelle S. Billeaud, Assistant District Attorney
Fifteenth Judicial District
P. O. Box 3306
Lafayette, LA 70502-3306
(337) 232-5170
COUNSEL FOR THE STATE OF LOUISIANA

Edward J. Marquet, Attorney at Law
P. O. Box 53733
Lafayette, LA 70505-3733
(337) 237-6841
COUNSEL FOR DEFENDANT-APPELLANT:
     Wesley James Monroe

**PAINTER, Judge.**

Defendant, Wesley James Monroe, was charged with second degree kidnapping, a violation of La.R.S. 14:44.1, and armed robbery, a violation of La.R.S. 14:64, on April 5, 2011. A jury found Defendant guilty of both counts. The trial court sentenced Defendant to forty years without benefit of probation, parole, or suspension of sentence on the second degree kidnapping conviction and to ninety-nine years without benefit of probation, parole, or suspension of sentence on the armed robbery conviction. These sentences were vacated when Defendant was adjudicated a habitual offender. Defendant was sentenced as a multiple offender to two concurrent life sentences at hard labor without benefit of parole, probation, or suspension of sentence. Defendant appeals his convictions. Additionally, Defendant appealed his adjudication as a habitual offender and the sentences imposed in this court's docket number 13-754,[1] wherein we affirmed both his adjudication as a habitual offender and the sentences imposed.

Appellate counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), alleging that no non-frivolous issues exist on which to base an appeal and seeking to withdraw as Defendant's counsel. We grant the motion to withdraw and affirm Defendant's convictions.

### FACTS AND PROCEDURAL HISTORY

On October 13, 2010, at around 10:00 to 11:00 p.m., the victim was in the parking lot of the Teche Federal Bank in Lafayette, Louisiana. He got out of his vehicle, left the door open, and turned around to get his wallet and keys. Two African-American men came up behind him, and one said to him: "give me what you got" and pointed a gun at his face.

---

[1] *See State v. Wesley James Monroe*, 13-754 (La.App. 3 Cir. ___/___/14), ___ So.3d ___.

The men forced the victim into the passenger seat of his truck. One of the men got in the back seat, and the gunman got in the driver's seat. The gunman then handed the gun to the other man, who held it to the victim's head "the whole way, the whole drive." One of the men told the victim that "if [he] ran, he'd pop a cap in [his] ass." The men took the victim's wallet (which according to the victim, contained a debit card and seven dollars), phone, and iPod.

The men took the victim to a Chase Bank ATM where they threatened the victim and forced him to give them his PIN number. The victim had only eighty-nine cents in his account. The men rode around in the victim's truck and finally dropped the victim off on the south side of Interstate 10. The victim believed that he "was going to get shot and dumped."

After the men let the victim out of the truck, he began walking westbound on the interstate and flagged down a passing officer within ten minutes. Police found the victim's truck a few minutes later.

Detective David Leblanc of the Lafayette Police Department showed two photographic lineups to the victim. The victim immediately recognized the driver, who originally had the gun, from Picture Number 2 in the first lineup. He did not recognize any of the photographs from the second lineup. Detective Leblanc showed the victim a third lineup, and the victim chose photographs of two men who possibly looked familiar to him. He identified those two photographs as possibly the man in the back seat, who held the gun to his head throughout the ride. He identified Defendant as the driver of the truck at trial. The victim said that Defendant wore a gray, white, and black hoodie and black pants or jeans at the time of the robbery.

Officer Nathan Thornton, III of the Lafayette Police Department answered a dispatch concerning an individual on Interstate 10 on October 13, 2010, and was

then flagged down by the victim on the interstate. Officer Thornton took information from the victim and issued a "be on lookout" (BOLO) alert for the truck. Approximately thirty minutes later, Officer Chase Guidry located the vehicle on West Willow Street. Soon after Officer Guidry received the BOLO, he saw the vehicle at an ATM at the Section 705 Credit Union. Forty dollars was withdrawn from the victim's account there. Officer Guidry followed the vehicle and called for more units. A suspect left the vehicle at Debaillon Park and fled on foot. A short time later, Canine Officer Ryan Judice found a jacket on the ground that Officer Guidry identified as worn by the suspect. The man was not apprehended.

Security photographs from the Section 705 Credit Union at the time of the withdrawal from the victim's account showed the driver of the vehicle wearing a jacket with a white stripe down the gray sleeve. Police took DNA samples from the jacket that Officer Judice found, and a match was made between that DNA and a "CODIS entry that was already on file." The DNA profile on file belonged to Defendant. At that point, the photographic lineups were prepared and submitted to the victim. Detective Leblanc identified Defendant at trial.

After the victim's photo lineup identification, police issued an arrest warrant for Defendant. Investigation developed Jermaine Ason as an additional suspect. Ason's statements about what happened were consistent with what the victim said.

Bethany Harris testified as a DNA analyst with the Acadiana Criminalistics Laboratory. She swabbed the back of the neck and both of the wrist cuffs of the jacket that was recovered and obtained DNA profiles from all three areas. She entered the profile from the neck of the jacket into the CODIS database; it matched "a profile that had already been attributed to [Defendant]." Although she could not

absolutely say that the profile she developed belonged to Defendant, she testified that he could not be excluded as the contributor of that DNA.

When Ason testified at trial, he was serving a thirty-five-year sentence for armed robbery, kidnapping, and manslaughter. He pled guilty to armed robbery and kidnapping in exchange for testifying against Defendant in this matter.

Ason said that he and Defendant were looking for a victim on October 13, 2010. They ran up to the victim's vehicle, and Defendant pulled a gun on the victim and told him to get inside. Ason got in the back. Defendant handed the gun to Ason, who held it on the victim. They took the victim's phone and wallet and went to Chase Bank. The Chase account had insufficient funds for a withdrawal. They drove to the interstate frontage road and dropped off the victim. Defendant took Ason home and left in the victim's truck.

Later, Ason looked outside and saw "a number of cops rolling around." A few minutes later, he saw Defendant "running through his grandmother's yard into the house." He was no longer wearing the jacket that he had worn earlier. The next day, Defendant told him that "he had to run from the cops after he had left from by the credit union." Defendant had withdrawn forty dollars, but he left it in the truck when he left it in Debaillon Park. Ason identified the jacket presented at trial as the one that Defendant wore when they committed the robbery. He identified Defendant at trial as his accomplice.

Prior to trial, the State filed a motion to use evidence of other crimes on August 22, 2012. The trial court ruled to allow the other evidence; however, the State agreed not to use any evidence of the other bad acts, and Defendant agreed not to use evidence of a co-defendant's manslaughter conviction other than the fact of the conviction itself. Trial counsel filed a motion to recuse the district judge on September 10, 2012, on grounds that the judge knew the victim's father.

4

Defendant also filed a pro se motion to recuse on the same grounds. The motions were denied at a hearing the same day that they were filed.

## DISCUSSION

*Errors Patent*:

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record, we find no errors patent.

*Anders Review*

Pursuant to *Anders*, 386 U.S. 738, Defendant's appellate counsel filed a brief stating that he could find no errors on appeal that would support reversal of Defendant's conviction or sentence. Thus, counsel seeks to withdraw.

In *State v. Benjamin*, 573 So.2d 528, 531 (La.App. 4 Cir. 1990), the fourth circuit explained the *Anders* analysis as follows:

> When appointed counsel has filed a brief indicating that no non-frivolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, *Anders* requires that counsel move to withdraw. This motion will not be acted on until this court performs a thorough independent review of the record after providing the appellant an opportunity to file a brief in his or her own behalf. This court's review of the record will consist of (1) a review of the bill of information or indictment to insure the defendant was properly charged; (2) a review of all minute entries to insure the defendant was present at all crucial stages of the proceedings, the jury composition and verdict were correct and the sentence is legal; (3) a review of all pleadings in the record; (4) a review of the jury sheets; and (5) a review of all transcripts to determine if any ruling provides an arguable basis for appeal. Under C.Cr.P. art. 914.1(D) this Court will order that the appeal record be supplemented with pleadings, minute entries and transcripts when the record filed in this Court is not sufficient to perform this review.

Pursuant to *Anders* and *Benjamin*, this court has performed a thorough review of the record, including pleadings, minute entries, the charging instrument, and the transcripts and has confirmed the statements by counsel. Defendant was properly charged in his bill of information, he was present and represented by

counsel at all crucial stages of the proceedings, the jury composition and verdict were correct, Defendant's sentences comply with the statutory sentencing range, and our review of the transcripts in the record reveals that there are only frivolous issues for appeal.

While it is not necessary for Defendant's counsel to "catalog tediously every meritless objection made at trial or by way of pre-trial motions with a labored explanation of why the objections all lack merit," counsel's *Anders* brief must "'assure the court that the indigent defendant's constitutional rights have not been violated.'" *State v. Jyles*, 96-2669, p. 2 (La. 12/12/97), 704 So.2d 241, 241 (quoting *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 439, 108 S.Ct. 1895, 1902 (1988)). Counsel must fully discuss and analyze the trial record and consider "whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration." *Jyles*, 704 So.2d at 241 (citing *United States v. Pippen*, 115 F.3d 422 (7th Cir. 1997)). Thus, counsel's *Anders* brief must review the procedural history, the evidence presented at trial and give "a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place." *State v. Mouton*, 95-981 (La. 4/28/95), 653 So.2d 1176, 1177.

Counsel's brief recites the facts found in the record. Counsel notes that the trial court denied Defendant's motion to recuse; the State agreed not to use evidence of other crimes at trial; Defendant agreed not to mention Ason's manslaughter conviction; and Defendant objected to the sentences as excessive. Counsel does not address whether the trial court erred in denying the motion to recuse or in overruling two defense objections during trial. However, the record

shows no non-frivolous issues regarding those rulings that would be appropriate for appeal.

The motion to recuse alleged that Judge Patrick Michot had discovered that he personally knew the victim and his father and that an appearance of impropriety required Judge Michot to be recused. The judge himself brought the acquaintance to the attention of the parties. At a hearing presided over by Judge Jules Edwards, Judge Michot testified about the relationship. Judge Michot stated that his son and the victim were in the Cub Scouts together some years prior but that he had never socialized with the victim or his parents. Judge Michot stated that he had no prejudice or bias against Defendant based on the past relationship that the victim had with the judge's family. He testified that any decision he might make in the case would not cause trouble in his relationship with anyone or affect it in any way. The victim's father confirmed that testimony.

Defendant argued that he also had a pending charge in a first degree murder case and that Judge Michot's ruling on the other crimes evidence issue would make a difference in this case. Judge Edwards determined that the evidence was insufficient to convince him that Judge Michot was biased, prejudiced, or personally interested in the case to the extent that he could not conduct a fair and impartial trial, and he denied the motion.

We find that the record contains no evidence of Judge Michot's bias, prejudice, or personal interest in the case. It contains nothing to suggest that Defendant would have fared better at trial had a different judge presided. Regarding the other-crimes-evidence issue, the parties agreed not to present that evidence; thus, Defendant's concerns regarding that evidence never came to fruition. Accordingly, any appeal of the denial of the motion to recuse would be frivolous.

Our review of the record shows that several challenges for cause were granted during voir dire, but the State and Defendant each used less than the allotted number of peremptory challenges. Only two defense objections were overruled at trial. The first concerned the victim's description of the suspects. When the victim testified, "I could tell you what they looked like in the line-up, but I can't explain it to you[,]" the State asked, "Well, were they Caucasian? Were they African American? Were they Chinese?" Defendant contended that the State was leading the witness, but the trial court allowed the victim to respond that they were African-American men.

The trial court correctly overruled the objection. The photographic lineup introduced into evidence in which the victim identified Defendant showed Defendant to be an African-American man. Thus, other evidence to which Defendant did not object showed the same result as the witness's response.

Regarding the second objection, the State asked a witness, "[D]id you learn any additional information from Mr. Ason that you didn't learn from Mr. Babineaux?" Defense counsel objected on grounds of hearsay. The State responded that: "I'm not asking what it is, Your Honor." The question required simply a "yes" or "no" answer. It did not seek hearsay testimony about the content or nature of the potential information. Thus, any argument on appeal concerning either overruled objection would be frivolous.

Additionally, Defendant did not file a motion to reconsider his sentence. Ordinarily, the failure to seek reconsideration of a sentence precludes a defendant from raising the issue on appeal. La.Code Crim.P. art. 881.1. However, this court has reviewed a sentence for bare excessiveness in the interest of justice even where no motion for reconsideration is filed. *State v. Davis*, 06-922 (La.App. 3 Cir. 12/29/06), 947 So.2d 201. Here, however, Defendant's sentences were ultimately

8

vacated by the later multiple offender proceeding, and he was resentenced under the multiple offender guidelines. Thus, any appeal concerning the underlying sentences for armed robbery and second degree kidnapping would be frivolous.

Another possible issue for appeal concerns the photographic lineups presented to the victim. We have reviewed the procedure to which law enforcement testified concerning the lineups and find that the record shows that none of Defendant's constitutional rights were violated regarding the lineups.

Our detailed review of the record in its entirety reveals no non-frivolous issues that Defendant could raise on appeal. Accordingly, the motion to withdraw filed by counsel is granted, and Defendant's convictions are affirmed.

## DECREE

Finding no non-frivolous issues for appeal, we grant defense counsel's motion to withdraw. Further, we affirm Defendant's convictions.

**CONVICTIONS AFFIRMED. MOTION TO WITHDRAW GRANTED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.

13-717

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA


STATE OF LOUISIANA

Plaintiff-Appellee

VERSUS

WESLEY JAMES MONROE

Defendant-Appellant

On Appeal from the Fifteenth Judicial District Court, Docket Number CR-132762, Parish of Lafayette, State of Louisiana, Honorable Patrick Louis Michot, Judge.

## **O R D E R**

After consideration of appellate counsel's request to withdraw as counsel and the appeal presently pending in the above-captioned matter;

IT IS HEREBY ORDERED that appellate counsel's motion to withdraw is granted.

THUS DONE AND SIGNED this _____ day of _____, 2013.

COURT OF APPEAL, THIRD CIRCUIT


_____
Judge Sylvia R. Cooks


_____
Judge J. David Painter


_____
Judge Shannon J. Gremillion